discharge. Hughes was never given any prior notice before his discharge. Hughes was never given an opportunity to be heard prior to his discharge. There was no cause for Hughes' discharge.

MHA justified Hughes' departure as a "reorganization" for budgetary reasons. This rationale was purely pretextual. Hughes' position was the only position "reorganized." His discharge did not result in any budgetary savings. He was replaced by an individual who made more money than Hughes.

Hughes' discharge were a part of Vasiliou and the MHA Commissioners' efforts to avoid compliance with the Fair Housing Act Settlement.

**B.    Dion Smith**

Dion Smith is the Work Center Coordinator for MHA. He was hired after Hughes, in 2001. Smith reported to Hughes for approximately one year, until the date of Hughes' discharge. Dion Smith was responsible for day-to-day maintenance at MHA's existing projects.

Anthony Vasiliou, Executive Director of MHA, has testified that Smith took over some of Hughes' responsibilities after the alleged "reorganization." In addition, Smith went over to Hughes' house after Hughes had been discharged to deliver his termination letter.

Subsequent to Hughes' discharge, Smith became involved in unionization activities for staff employees at MHA. MHA's staff employees unionized in 2003, and Smith became shop steward. In addition, in 2003, Smith has been interviewed by HUD investigators pertaining to MHA. Finally, on September 29, 2003, Mr. Smith gave notice to Mr. Vasiliou of a potential defamation claim pertaining to a false letter of reference that Mr. Vasiliou had given Mr. Smith.[2] A copy of that letter is attached as Exhibit 2. None of these matters are in any way relevant to Hughes' employment claims.

## III.    RELEVANT PROCEDURAL HISTORY

Although this is a relatively simple and straightforward case, there has already been substantial discovery in this matter by both sides.

On November 24, 2003, even though Mr. Smith is MHA's own employee, and is a relatively minor witness in the instant case, MHA subpoenaed him and requested documents for a deposition in Hartford, Connecticut, approximately forty miles from where he lives and works.

Moreover, MHA's subpoena seeks documents that have no relation to the instant employment case. See Exhibit 1.

On November 26, 2003, as counsel for Mr. Smith, I requested that the deposition be

---

[2]    I represent Mr. Smith on that matter.

6

relocated to the New Haven area, and that the scope of production and testimony be limited to matters related to Mr. Hughes' employment or the termination of Mr. Hughes' employment. See letter of Attorney Chimes to Attorney Walker, dated November 26, 2003, attached as Exhibit 3.

Attorney Walker, counsel for the defendants, would not agree to relocate the deposition or to any limitations on the scope of production or the deposition. See letter of Attorney Walker to Attorney Chimes, dated December 1, 2003, attached as Exhibit 4.

## IV.    DISCUSSION

Rule 26(b) of the Federal Rules of Civil Procedure states in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . [i]f it is reasonably calculated to lead to the discovery of admissible evidence.

Although the contours of discovery are broad under the Federal Rules of Civil Procedure, parties should not be permitted to roam in the shadow zones of relevance and to explore matter which does not appear germane merely on the theory that it might become so. In re Surety Association of America 388 F.2d 412 (2d Cir. 1967). When the relevance of particular discovery is questionable, discovery will generally be denied when the party seeking discovery has made no showing of relevance. Payne v. Howard, 75 FRD 465 (D DC 1977).

Rule 26(c) makes clear that the court may balance the competing needs of all interested

7

persons, including third party witnesses, in setting appropriate limits to discovery in civil

litigation:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably oppressive or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Rule 45 (c)(1) of the Federal Rules of Civil Procedure states in pertinent part:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.

Rule 45(c)(3)(A)(iii) of the Federal Rules of Civil Procedure state in pertinent part:

> On timely motion, the court by which a subpoena was issued may quash or modify the subpoena if it . . .requires disclosure of privileged or other protected matter and no exception or waiver applies.

Rule 45(c)(3)(A)(iv) of the Federal Rules of Civil Procedure state in pertinent part:

> On timely motion, the court by which a subpoena was issued may quash or modify the subpoena if it . . .subjects the person to an undue burden.

Mr. Smith resides in Branford, Connecticut and works in Milford, Connecticut. He is an

8

employee of the defendant Milford Housing Authority. Defendants can discuss matters relevant to Mr. Hughes' case with him at any time during the course of his employment at his workplace. They do not need to subpoena him. It is completely unnecessary to make him travel to Hartford.

Although the federal rules permit defendants' to subpoena a witness to a location within 100 miles of his residence, clearly the subpoena in the instant case is an inconvenience and an undue burden. Its clear import is to retaliate against and harass Mr. Smith for his union activities, his complaint against Mr. Vasiliou, and his cooperation with the HUD investigation.

Mr. Smith's union activities, his claim for defamation, and his cooperation with HUD all took place after Mr. Hughes had been terminated. Inquiry or document would be completely irrelevant to Hughes' claims. To the extent that counsel seeks discovery on those matters, it is an improper use of the discovery process in this case.

## V.    CONCLUSION

For the reasons stated herein, Mr. Smith requests that his Motion to Quash the subpoena be granted. In the alternative, Mr. Smith requests that:

    (1)    The deposition take place in the New Haven area;

    (2)    Defendants be precluded from inquiring into:

        a)  Mr. Smith's union organizing activities;

9

        b) Mr. Smith's cooperation with the HUD investigation;

        d) Mr. Smith's complaint against Mr. Vasiliou.

(3)      Mr. Smith be excused from producing documents relating to:

        a)   Mr. Smith's union organizing activities;

        b) Mr. Smith's cooperation with the HUD investigation;

        d) Mr. Smith's complaint against Mr. Vasiliou.

(4)      The deposition be limited to matters related to Mr. Hughes' employment and the termination of his employment.

10

**RESPECTFULLY SUBMITTED,**
**DION SMITH**

By: _____

Lewis H. Chimes
*Federal Bar No. ct07023*
GARRISON, LEVIN-EPSTEIN,
      CHIMES & RICHARDSON, P.C.
405 Orange Street
New Haven, CT  06511
(203) 777-4425


## CERTIFICATION OF SERVICE

I hereby certify that the original of the foregoing was mailed, via U .S. mail, postage prepaid on this 8th day of **December, 2003** to:

Richard F. Vitarelli, Esquire
Ann Noble Walker, Esquire
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

_____
Lewis Chimes

11

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN HUGHES,                                    CIVIL NO.  302CV1917 (MRK)
        Plaintiff,
                                            :
                                            :
V.                                          :
                                            :
MILFORD HOUSING AUTHORITY,                  :
ANTHONY VASILIOU, RICHARD                   :
ANDERSEN, HILARY HOLOWINK, JOHN             :
AMENTA, EDWARD CANELLI AND JACK             :
TUCCIARONE,                                 :
        Defendants.                         :       NOVEMBER 24, 2003

## NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that at 10:00 a.m. on Wednesday, December 10, 2003,

pursuant to §§ 13-26, et seq of the Connecticut Rules of Court, the Defendants, **Milford Housing**

**Authority, Anthony Vasiliou, Richard Andersen, Hilary Holowink, John Amenta, Edward**

**Canelli and Jack Tucciarone** will take the deposition of **Dion Smith, of Milford Housing**

**Authority,** in the above-captioned case, before an official court reporter or other competent

authority at the law offices of Robinson & Cole LLP, 280 Trumbull Street, Hartford, CT  06103-

3597.

The deponent is requested to bring the documents listed in Schedule A attached hereto.

You are invited to attend and cross-examine.

DEFENDANTS,
MILFORD HOUSING AUTHORITY, ANTHONY
VASILIOU, RICHARD ANDERSEN, HILARY
HOLOWINK, JOHN AMENTA, EDWARD
CANELLI, JACK TUCCIARONE

By: _____
     Richard F. Vitarelli (ct 15145)
     Anne Noble Walker (ct 11637)
     Robinson & Cole LLP
     280 Trumbull Street
     Hartford, CT 06103-3597
     Tel. No.: (860) 275-8200
     Fax No.: (860) 275-8299
     Email: awalker@rc.com


## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, certified mail, return receipt

requested, on this 24th day of November, 2003 to:

Lewis H. Chimes, Esq.
Garrison, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511


_____
Anne Noble Walker

2

## **SCHEDULE A**

Any and all documents, including e-mails or other documents stored on a computer or disk, relating in any way to John Hughes' employment or separation of employment from the Milford Housing Authority.

Any and all documents, including e-mails or other documents stored on a computer or disk, relating in anyway to implementation of the Settlement Agreement between the Milford Housing Authority and the DOJ/HUD.

Any and all documents, including e-mails or other documents stored on a computer disk, reflecting or relating to communications between you and the DOJ or HUD or the CCLU.

3

# EXHIBIT 2

# GARRISON, LEVIN-EPSTEIN, CHIMES & RICHARDSON, P.C.

ATTORNEYS AT LAW
405 ORANGE STREET
NEW HAVEN, CONNECTICUT 06511

JOSEPH D. GARRISON
ETHAN A. LEVIN-EPSTEIN*†
LEWIS CHIMES*†
ROBERT A. RICHARDSON
JEFFREY S. BAGNELL†
STEPHEN J. FITZGERALD*

TEL. 203-777-4425
FAX. 203-776-3965
WWW.GARRISONLAW.COM

* ALSO ADMITTED TO NEW YORK BAR
† ALSO ADMITTED TO MASSACHUSETTS BAR

**CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

September 29, 2003

Ann Noble Walker, Esquire
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597
**7001 1140 0002 1913 6189**

Re:   **Dion Smith v. Anthony Vasiliou**

Dear Attorney Walker:

I have been retained by Dion Smith in connection with certain actions taken against him by Anthony Vasiliou. Since Mr. Vasiliou is represented by you in the <u>Hughes</u> matter, I have directed this letter to your attention. If it should more properly be directed elsewhere, please forward it to Mr. Vasiliou or the appropriate party.

As you are aware, Mr. Smith is the Work Center Supervisor for the Milford Housing Authority. He has been in that position for over three years. Mr. Smith has always performed his responsibilities competently. He had received positive performance evaluations in the past and never received any criticism of his performance.

Recently, Mr. Smith was active in union organization activities at the Milford Housing Authority. In addition, as Mr. Vasiliou is aware, he has cooperated in the ongoing HUD audit and investigation of the Milford Housing Authority. Mr. Vasiliou knew that Mr. Smith had spoken to HUD's inspector general.

Mr. Smith recently applied for continuing education at Albertus Magnus College's New Dimensions Program. The program is for working persons who are attempting to get a degree. As part of the application process, he had to obtain a recommendation from his supervisor, Mr. Vasiliou.

GARRISON, LEVIN-EPSTEIN, CHIMES & RICHARDSON, P.C.

Mr. Vasiliou represented that he would be happy to assist him in going back to school, that it was a good idea for him to further his education. Vasilious told Smith that he would be happy to give him a recommendation to get into Albertus.

Despite his representations that he would assist Mr. Smith, Mr. Vasiliou submitted an extremely negative recommendation on Mr. Smith's behalf, a copy of which is attached. Specifically, the recommendation described Mr. Smith's "skills in need of improvement" as:

> Development of thinking skills, strengthen cognitive skills, to differentiate between personal and professional responsibilities, follow through on assigned and repetitive tasks.

Mr. Vasiliou was asked to rate Mr. Smith in eleven using a 1 - 5 scale, 1 being "weak," 5 being "strong." Mr. Vasilious gave Mr. Smith a "1" rating for four categories: (interact with a group, cooperate in meeting group goals, work under stress, assume personal responsibility). He gave him a "2" rating in three categories (clearly express self in writing, carry out assigned tasks, and utilize learned materials or skills).

Based upon Vasiliou's negative recommendation, Albertus' admissions counselor told Mr. Smith that he would be unable to be admitted to the program.[1]

Mr. Vasiliou's characterization of Mr. Smith's professional abilities was false. They were done in retaliation for his cooperation with the HUD investigation and his role in union organizing activities. He will have claims against Mr. Vasiliou for defamation, tortious interference with a business expectancy, negligent misrepresentation and intentional infliction of emotional distress.

Although we feel that Mr. Smith's claims are strong, he has authorized me to discuss resolution of this matter. Please contact me, or if you will not be representing him, have the appropriate person contact me at your earliest convenience. If we do not hear from you or Mr. Vasiliou's representative on or before October 15, 2003, we will assume that Mr. Vasiliou has chose to litigate this matter.

---

[1]    Smith subsequently obtained a positive recommendation from another Milford Housing Authority co-worker, and was ultimately admitted to the program based upon the other recommendation.

2