UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN HUGHES,

    Plaintiff,

V.  :  CIVIL NO. 3:02CV1917(MRK)

MILFORD HOUSING AUTHORITY, ET AL.,

    Defendants.  :  DECEMBER 23, 2003

DEFENDANTS' OBJECTION TO PLAINTIFF'S
MOTION TO QUASH THE DEPOSITION TESTIMONY OF
THIRD PARTY WITNESS, DION SMITH

**PRELIMINARY STATEMENT**

This action rises out of the Plaintiff's separation of employment from the Milford Housing Authority (the "MHA") in March of 2002. Plaintiff's Amended Complaint now[1] alleges unlawful retaliation under the Fair Housing Act, 42 U.S.C. § 3617, and state law claims for (i) breach of contract, (ii) breach of the covenant of good faith and fair dealing, and (iii) wrongful discharge in violation of public policy.

On or about November 24, 2003, in accordance with the Scheduling Order in this matter, the Defendants noticed the deposition of Mr. Dion Smith for December 10, 2003. Just prior to the Smith deposition, the Plaintiff filed a Motion to Quash that deposition. Despite efforts to reach an agreement to proceed with the deposition, the parties were unable to do so, and this motion is now before this Court. (See correspondence between counsel attached as Exhibit A).

---

[1] In July 2003, the Plaintiff amended his Complaint, over the Defendants' objection, and added claims for breach of contract and breach of the covenant good faith and fair dealing. In his Motion to Quash Dion Smith's deposition testimony, the Plaintiff withdrew his claims brought under 42 U.S.C. § 1983 (Count IV) and Connecticut General Statutes § 31-51q (Count III).

HART1-1149047-2

For the reasons set forth below, the Defendants respectfully request that this Court order the Smith deposition to proceed at the offices of Robinson & Cole in Hartford, Connecticut without the limitations sought by the Plaintiff.

**RELEVANT FACTS**

The Plaintiff alleges that in 1996/1997, the MHA was the subject of several lawsuits for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (Amended Complaint ¶9). The Plaintiff further alleges that the lawsuits were brought by the United States Department of Justice (the "DOJ"), the NAACP and several private individuals. (Id.) In addition, the Plaintiff alleges that, in 1999, the Milford Housing Authority reached a Settlement Agreement with the DOJ, the NAACP and the private plaintiffs. (Id. at ¶ 10) The Settlement Agreement sets forth a detailed procedure for MHA's expenditure of approximately $3.5 million for up to twenty-eight units of housing. The expenditure of these funds was and is overseen by the Department of Housing and Urban Development ("HUD") and compliance with the Settlement Agreement is monitored by the DOJ.

Mr. Hughes worked as the Director of Facilities Management and Operations for the MHA from 1999 until his separation in March of 2002. The Plaintiff alleges that he was terminated in retaliation for threatening to tell the DOJ about the MHA's purported noncompliance with the Settlement Agreement. (Amended Complaint ¶ 22). The Plaintiff also alleges that he was discharged in retaliation for aiding and/or encouraging other persons in the exercise and/or enjoyment of rights granted or protected by the federal Fair Housing Act. (Id. ¶ 23).

Mr. Dion Smith, the deponent at issue, is a current employee of the MHA. He is the MHA's Work Center Supervisor and previously reported to the Plaintiff. The Defendants seek

to depose Mr. Smith in connection with the Hughes matter. The Defendants maintain that Mr. Smith was a material witness to actual events preceding the Complainant's separation of employment. In addition, Mr. Smith may have information regarding Mr. Hughes' claim that Mr. Hughes aided and abetted other persons in the exercise or enjoyment of their rights under the federal Fair Housing Act. Finally, Smith may have information that supports MHA's defense that the Plaintiff was terminated for a legitimate, nondiscriminatory reason.

**ARGUMENT**

The Federal Rules of Civil Procedure, Rule 26(b) provides:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party...Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1)

"This obviously broad rule is liberally construed." Daval Steel Products v. Fakredine, et al, 951 F.2d 1357, 1367 (2d Cir. 1991). "Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues. Nor is discovery limited to the merits of the case, for a variety of fact oriented issues may arise during litigation that are not related to the merits." Oppenheimer Fund, Inc., et. al. v. Sanders, 437 U.S. 340, 351, 90 S. Ct. 2380 (1978) (citations omitted). "The court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation" (Id.) (citations omitted). Accord Security Insurance Co. of Hartford v. Trust Mark Insurance Co., 218 F.R.D. 24 (D. Conn. 2003).

The deposition of Mr. Smith falls well within Rule 26's liberal discovery standard. Indeed, Mr. Smith's testimony should be freely taken because Mr. Smith was a material witness to the actual separation of Mr. Hughes' employment[2] and the terms and conditions of the Plaintiff's employment. Similarly, any interaction that Mr. Smith allegedly had with HUD or DOJ is also discoverable as it is reasonable calculated to lead to discovery of admissible evidence. Therefore, Defendants should be permitted to depose Mr. Smith without the limitations suggested by the Plaintiff in his Motion to Quash.

### A. **The Plaintiff's contention that the purpose of the deposition is to retaliate against or harass Mr. Smith for his union activities is entirely without merit.**

At issue in this case is the actual reason for the separation of Mr. Hughes' employment. This question is raised by each of the surviving Counts in the Amended Complaint. Therefore, any conversation Mr. Hughes had with any individual regarding the separation of his employment and the reasons for the separation of his employment is probative of the central issue in this lawsuit and likely to lead to the discovery of admissible evidence. This is particularly true because Mr. Hughes gave conflicting deposition testimony on his recollection as to what he was told about his termination at the time of separation of his employment. (See Deposition of Mr. Hughes attached as Exhibit B, pages 52-57, 108-115). Notably, Mr. Hughes also testified that he may have spoken with Mr. Smith about the separation of his employment and that he repeated the allegations in the Complaint to Mr. Smith (Dep. p. 112, 153-154). There is no doubt that the Defendants are entitled to explore what Hughes told to Mr. Smith and what Mr. Smith actually witnessed regarding the separation and terms of Mr. Hughes' employment. Such conversations and observations relate directly to the credibility of the Plaintiff's assertions that the Defendants stated reasons for his discharge were a pretext for retaliation or

---

[2] Smith delivered the separation letter to the Plaintiff on the day of his termination.

discrimination. In short, the Plaintiff's contention that the import of this deposition is to retaliate against and harass Mr. Smith is entirely without merit.

### B. The Defendants should be permitted to inquire into Mr. Smith's conversations with HUD and the DOJ.

Mr. Hughes' has brought a claim under the Fair Housing Act alleging that he aided and abetted in the implementation of the 1999 Settlement Agreement between the MHA and DOJ. (Amended Complaint ¶ 23). Mr. Hughes further alleges that his employment was severed because of that activity. (Id.) It is undisputed that HUD and DOJ were informed of the allegations made in the Complaint. Indeed the allegations in the Complaint prompted a DOJ audit of the MHA in August of 2002[3]. The Defendants, in Smith's deposition, are entitled to explore how such statements were communicated to DOJ and HUD, by whom, and the extent of Hughes' and his colleagues' involvement in such activity to allegedly enforce the Settlement Agreement. Such information is, at a minimum, probative of the charge that the Plaintiff allegedly aided and abetted the named Plaintiffs in the Settlement Agreement.

The Plaintiff contends that conversations that occurred with HUD or DOJ <u>following</u> the separation of Mr. Hughes' employment should not be explored in the deposition. However, such conversations could clearly lead to the discovery of admissible evidence. In particular, the DOJ ultimately concluded, in 2002, as revealed in the deposition of Ms. Shelley White, that there was insufficient evidence to support claims that the MHA thwarted implementation of the Settlement Agreement. The fact that the DOJ chose not to pursue allegations of noncompliance <u>after investigating Hughes</u> and <u>possibly Smith's</u> statements is probative of and lends credence to the Defendants' position that Mr. Hughes was terminated for a legitimate, nondiscriminatory reason.

---

[3] See deposition testimony of Attorney Shelly White, lawyer for the private plaintiffs, pages 36-37 attached as Exhibit C. White testified that, after the audit, DOJ took no action because, contrary to Hughes' assertions, "we didn't see the evidence there to be able to follow-up on it." (Id. p. 37).

The Defendants in this case are entitled to determine how the DOJ reached that conclusion and the nature of the information that may have been provided by Mr. Smith in connection with allegations that the intent of the MHA was to thwart implementation of the Agreement.

In addition, simply because Smith's conversations with DOJ or HUD may occurred after the separation of Mr. Hughes' employment does not mean that conversations that Smith had with the DOJ or HUD were limited to topics that postdated Mr. Hughes separation of employment.[4] Mr. Smith could have been discussing events that occurred well prior to March of 2002 with DOJ and with HUD. The Defendants are thus entitled to explore Smith's conversations with HUD and DOJ without limitation. Such testimony is probative of Hughes role in aiding and abetting the named Plaintiffs and relevant to establishing the legitimacy of the stated reasons for Plaintiff's separation of employment.

### C. **The Defendants have no obligation to take this deposition in New Haven.**

Rule 45 of the Federal Rules of Civil Procedure provides that a deposition may take place anywhere within 100 miles from where the deponent resides, is employed, or regularly transacts business. Thus, the Defendants are well within their rights to have Mr. Smith deposed at Robinson & Cole in Hartford, Connecticut. Notably, Defendants' files are maintained in Hartford and the location falls well within the scope of the Rule. There has been no showing of undue burden or hardship. Furthermore, the Defendants have accommodated the Plaintiff's request to have depositions taken in New Haven by finishing the depositions of Mr. Hughes and Mr. Vasiliou at Attorney Chimes' New Haven office. There is no reason for the deposition of Mr. Smith, a fact witness, to be taken at his lawyer's office in New Haven.

---

[4] Indeed, the timing of the 2002 DOJ audit suggests just the opposite conclusion.

Wherefore, the Defendants respectfully request the deposition of Mr. Hughes proceed, unimpeded, in Hartford, Connecticut and that the Motion to Quash be denied in its entirety, with costs for this Motion assessed to the Plaintiff.

>DEFENDANTS,
>MILFORD HOUSING AUTHORITY, ANTHONY VASILIOU, RICHARD ANDERSEN, HILARY HOLOWINK, JOHN AMENTA, EDWARD CANELLI, JACK TUCCIARONE
>
>By: _____
>Richard F. Vitarelli (ct 15145)
>Anne Noble Walker (ct 11637)
>Robinson & Cole LLP
>280 Trumbull Street
>Hartford, CT 06103-3597
>Tel. No.: (860) 275-8200
>Fax No.: (860) 275-8299
>Email: awalker@rc.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 23rd day of December, 2003 to:

Lewis H. Chimes, Esq.
Garrison, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511

Anne Noble Walker