# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------x

| | | |
|---|---|---|
| **JOHN HUGHES,** | : | **CIVIL ACTION NO.** |
| **Plaintiff,** | : | **3:02CV1917(MRK)** |
| **vs.** | : | |
| **MILFORD HOUSING AUTHORITY, ET AL,** | : | |
| **Defendants.** | : | **March 23, 2004** |

---------------------------------------------------------x

## SECOND AMENDED COMPLAINT

### I.   Introduction

1.        The plaintiff, John Hughes, brings this action pursuant to the Fair Housing Act

("FHA"), 42 U.S.C. §3617, 42 U.S.C.§1983 ("1983"), and state law claims for wrongful

discharge in violation of public policy, breach of contract, breach of the covenant of good

faith and fair dealing, and Conn. Gen. Stat. §31-51q., stemming from the termination of

his employment by the Milford Housing Authority on March 8, 2002.

        The plaintiff also brings claims against defendants collectively and Anthony

Vasiliou individually for unlawful retaliation stemming from Vasiliou's filing of a

frivolous defamation complaint that was served upon Hughes on or about February 25,

2004.

### II.   Jurisdiction and Venue

2.        This case was removed to U.S. District Court pursuant to 28 U.S.C. §1441.

3.        There is original jurisdiction pursuant to 28 U.S.C. §1331.

4.        There is jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

### III.   Parties

5.        At all times mentioned herein, the plaintiff, John Hughes, was a resident of

Stratford, Connecticut.

6.        At all times mentioned herein, the Defendant Milford Housing Authority

("MHA") was a municipal corporation established pursuant to Conn. Gen. Stat. §8-40 and

located in Milford, Connecticut. It is a public housing authority receiving federal funds

for development and operation of public housing pursuant to the United States Housing

Act of 1937, as amended, 42 U.S.C. § 1437 et seq. It operates under the direction of a five

member Board of Commissioners.

7.        At all times mentioned herein, the defendants Richard Anderson, Hilary

Holowink, John Amenth, Edward Canelli, and Jack Tucciarone (Collectively "the

commissioners") were commissioners of the defendant MHA acting within the scope of

their authority.

8.        At all times mentioned herein, the defendant Anthony J. Vasiliou was the

Executive Director of the defendant MHA.

### IV.   Statement of Facts

9.        In 1996 and 1997, the defendant MHA was the subject of several lawsuits,

consolidated under dkt. # 396 CV 01118 (AHN), for violations of the Fair Housing Act,

42 U.S.C. §§3601, et seq. The lawsuits were brought by the United States Department of

Justice, the NAACP, and several private individuals. The lawsuits were brought as a

result of the cancellation of a federally subsidized scattered site housing program in

September 1995.

10.     In 1999, the MHA reached a settlement agreement with the U.S. Department of

Justice, the NAACP, and the private plaintiffs.  The purpose of the settlement agreement

was to further the purpose of the Fair Housing Act, to wit, to ensure that low income and

minority citizens gain the benefits of subsidized housing provided by the MHA.

11.     In the settlement agreement, the MHA would receive $3,500,000 from the

Department of Housing and Urban Development and agreed to develop 28 units of

scattered site housing over a three year period.  This would be done under the monitoring

and supervision of HUD and the Department of Justice.

12.     John Hughes commenced employment with the Milford Housing Authority on

January 5, 1999, in the position of Director of Facilities Management and Operations.

13.     Hughes reported directly to defendant Anthony J. Vasiliou.

14.     Hughes, Vasiliou, the Commissioners, and the other employees of MHA were

obligated to follow the Fair Housing Act, and to implement the settlement agreement.

15.     Despite the legal obligation and funding provided to implement the settlement

agreement, Vasiliou told Hughes on several occasions that he had no intention of

complying with the settlement agreement.

16.     Vasiliou told Hughes that he would avoid compliance with the mandate to

develop scattered site housing by spending the money on "soft" costs, such as architects.

17.     On February 28, 2002, Mr. Hughes was speaking to an architect who was working

on the scattered site project for the Milford Housing Authority.  The architect was seeking

more funds.

18.     Frustrated by the demand for more funds, Mr. Hughes indicated that "if the Justice

-3-

Department came in here, I would tell them that Anthony Vasiliou has no intention of building 28 units of scatter site housing."

19.         Anthony Vasiliou overhead this conversation and chastised Mr. Hughes.

20.         Eight days later, on March 8, 2002, Mr. Hughes was discharged.

**COUNT ONE**          **(Hughes as to MHA, Vasiliou, Commissioners - Fair Housing Act Violation - 42 U.S.C. §3617)**

21.         Paragraphs 1 - 20 are hereby incorporated by reference herein as paragraphs 1 - 20 of the First Count.

22.         Mr. Hughes was discharged in retaliation for threatening to tell the Justice Department about MHA's noncompliance with their Fair Housing Act settlement.

23.         Mr. Hughes was discharged from his employment with MHA in retaliation for aiding and/or encouraging other persons in the exercise and/or enjoyment of rights granted and/or protected by the federal Fair Housing Act.

24.         As a result of his discharge, Mr. Hughes has suffered and will continue to suffer lost earnings and benefits.

25.         As a result of his discharge, Mr. Hughes has suffered mental anguish and emotional distress.

**COUNT TWO**          **(Hughes as to MHA - Wrongful Discharge in Violation of Public Policy)**

26.         Paragraphs 1 -25  of the First Count are hereby incorporated by reference herein as paragraphs 1 - 25 of the Second Count.

27.         The State of Connecticut has a strong public policy supporting the provision of affordable housing to low income persons and providing equal access to low income and

-4-

subsidized housing to minorities. See e.g., Conn. Gen. Stat. §7-148 et seq., §8-265c et seq., §8-315, and §46a-64 et seq..

28.       The United States of America has a strong public policy supporting the provision of affordable housing to low income persons and providing equal access to low income and subsidized housing to minorities. See e.g., 42 U.S.C. §3603 et seq.

29.       MHA's settlement agreement with the Department of Justice, the NAACP, and the private plaintiffs furthered these important public policies.

30.       Mr. Hughes was discharged in retaliation for threatening to tell the Department of Justice of Vasiliou' noncompliance with MHA's Fair Housing Act settlement.

**COUNT THREE**     **(Hughes as to MHA -Retaliation for Exercise of First Amendment Rights, Conn. Gen. Stat. §31-51q )**

31.       Paragraphs 1 -30 of the Second Count are hereby incorporated by reference herein as paragraphs 1 - 30 of the Third Count.

32.       Mr. Hughes was discharged in retaliation for speaking out about a matter of important public policy - MHA's noncompliance with the Fair Housing Act Settlement.

**COUNT FOUR**     **(Hughes as to Vasiliou and the Commissioners  - 42 U.S.C. §1983 - First Amendment)**

33.       Paragraphs 1 - 32 of the Third Count are hereby incorporated by reference herein as paragraphs 1 - 32 of the Fourth Count.

34.       At all times mentioned herein, the defendants, Anthony Vasiliou and the MHA commissioners, were acting under color of law, to wit, municipal ordinances and state laws governing the hiring and firing of employees.

35.       Defendants termination of John Hughes' employment in retaliation for speaking

out on a matter of public policy, deprived Hughes of rights, privileges, and immunities guaranteed by the Constitution of the United States, and the State of Connecticut, to wit, the guarantee of free speech under the First Amendment of the United States Constitution and Article 1 Section 4 of the Constitution of the Connecticut.

**COUNT FIVE**         **(Breach of Contract)**

36.         Paragraphs 1 - 35 of the Fourth Count are hereby incorporated by reference as paragraphs 1 - 35 of the Fourth Count.

37.         The plaintiff was employed by MHA from January 1999 until his discharge in March 2002.

38.         At all times during his employment with MHA, MHA maintained personnel policies for its non-union employees.

39.         MHA's personnel policies governed the terms and conditions of the employment relationship.

40.         MHA personnel policies were mutually binding upon MHA and Hughes, and constituted an enforceable contract.

41.         Plaintiff relied on the representations and policies contained in the MHA personnel policies in his continued employment with MHA.

42.         Paragraph 7.7 of MHA's personnel policies stated that a non-probationary employee could only be terminated for cause.

43.         Paragraph 7.8 of MHA's personnel policies state that when an employee is to be dismissed, he is to be provided with notice and an opportunity to be heard, with their representative, as to why he should not be dismissed.

44.         Paragraph 7.9 of MHA's personnel policies state in pertinent part:

<u>Reduction in Force.</u> If it is necessary to reduce personnel, the selection of employees to be retained shall be based primarily on their relative efficiency and the operating and budgetary needs of the MHA as determined by the Executive Director. Other things being equal, length of service shall be given consideration.

45.         Hughes was terminated without cause.

46.         Hughes was not provided with notice and an opportunity to be heard prior to his termination.

47.         Defendants' termination of Hughes was not a proper reduction in force.

48.         Defendants' termination of Hughes' employment violated its personnel policies, and was a breach of contract.

49.         As a result of defendants' breach of its employment contract with Hughes, Hughes has suffered lost wages and benefits and will continue to suffer lost wages and benefits into the future.

**COUNT SIX        (Breach of the Covenant of Good Faith and Fair Dealing)**

50.         Paragraphs 1 - 49 of the Fifth Count are hereby incorporated by reference as paragraphs 1 - 49 of the Sixth Count.

51.         Defendants' conduct constituted a breach of its covenant of good faith and fair dealing.

**COUNT SEVEN        (Hughes as to MHA, Commissioners, Vasiliou - Retaliatory Violation of Fair Housing Act by Filing of Defamation Complaint)**

52.         Paragraphs 1 - 20 are hereby incorporated by reference as paragraphs 1 - 20 of the Seventh Count.

53.         Several months after Hughes' discharge from the Milford Housing Authority, in

-7-

August 2002, Hughes was interviewed by attorneys from the Justice Department Civil

Rights Division in connection with an investigation of potential violations of the FHA by

defendants.

54.         Hughes cooperated in that investigation and provided truthful information about

his knowledge about the Milford Housing Authority and statements made by Anthony

Vasiliou about matters of public concern.

55.         In October 2002, Hughes, through counsel, filed the instant complaint alleging

violations of the Fair Housing Act, 42 U.S.C. §3617, in connection with his discharge,  in

the State of Connecticut Superior Court for the Judicial District of Ansonia/Milford.  The

case was removed to U.S. District Court by defendants on October 30, 2002.

56.         Hughes had a good faith basis to file his FHA claim.

57.         Mr. Hughes also spoke to Frank Juliano, a reporter for the Connecticut Post after

he had filed his lawsuit.  In October 2002, Hughes was quoted in the Connecticut Post by

Juliano on several occasions.  Copies of the two articles are attached hereto as Exhibit 1

58.         Hughes made truthful statements to Juliano about matters of public concern.

59.         Commencing in 2003, the U.S. Department of Housing and Urban Development

("HUD"), Office of Inspector General commenced an audit of the Milford Housing

Authority operations.

60.         On February 19, 2004, Hughes was interviewed by HUD investigators in

connection with that audit.

61.         Hughes provided truthful information on a matter of public concern to the HUD

investigators.

62.     On February 25, 2004, six days later, Hughes was served with a defamation lawsuit by Anthony Vasiliou. A copy of the lawsuit is attached as Exhibit 2.

63.     Vasiliou's defamation lawsuit is frivolous.

64.     At the time that Vasiliou filed the lawsuit, Hughes was 66 years old and has remained unemployed since the time of his discharge by the MHA.

65.     Vasiliou's lawsuit was undertaken in retaliation for Hughes' support of the Fair Housing Act through his statements and conduct.

66.     Vasiliou's lawsuit was undertaken in retaliation for Hughes' filing of a Fair Housing Act claim relating to his discharge.

67.     At all times mentioned herein, Vasiliou was the agent, servant, and employee of the defendants.

68.     Vasiliou's lawsuit was undertaken for the benefit of the defendants.

69.     On information and belief, defendants have financed Vasiliou's lawsuit against Hughes.

70.     Defendants have aided, abetted, and assisted Vasiliou's lawsuit against Hughes.

71.     As a result of defendants' retaliatory act, Hughes will incur additional expenses, including, but not necessarily limited to attorney's fees and legal costs and travel expenses.

72.     As a result of defendants' retaliatory act, Hughes has suffered additional emotional distress.

-9-

**COUNT EIGHT**    (Hughes as to All Defendants - §1983 Free Speech Claim -for Retaliatory Lawsuit)

73.    Paragraphs 1 - 20, and 53 - 72 of the Seventh are hereby incorporated by reference as paragraphs 1 - 20, 53-72 of the Eighth Count.

74.    At all times mentioned herein, the defendants, Anthony Vasiliou and the MHA commissioners, were acting under color of law, to wit, municipal ordinances and state laws governing the administration of Public Housing Authorities.

75.    Vasiliou's lawsuit against Hughes was in retaliation for speaking out on a matter of public policy, and deprived Hughes of rights, privileges, and immunities guaranteed by the Constitution of the United States, and the State of Connecticut, to wit, the guarantee of free speech under the First Amendment of the United States Constitution and Article 1 Section 4 of the Constitution of the Connecticut.

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff claims the following damages:

   a.    A money judgment for compensatory damages, back pay, lost benefits and other fringe benefits and consequential damages;

   b.    A money judgment for physical and emotional distress suffered by the plaintiff;

   c.    An award of reasonable attorney's fees and costs;

   d.    Punitive damages; and

   e.    Such other and further relief as may be just and proper.

-10-

RESPECTFULLY SUBMITTED,
THE PLAINTIFF

By:_____
Lewis H. Chimes
*Federal Bar No. ct 07023*
GARRISON, LEVIN-EPSTEIN, CHIMES
& RICHARDSON, P.C.
405 Orange Street
New Haven, CT  06511
Ph:  (203) 777-4425
Fax:  (203) 776-3965
Lchimes@garrisonlaw.com


## CERTIFICATION

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. mail, postage prepaid, this 23rd day of March 2004 to:

Ann Noble Walker, Esquire
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597


_____
Lewis Chimes

-11-