UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN HUGHES,                          :
    Plaintiff,                    :
V.                                    :   CIVIL NO. 3:02CV1917(MRK)
                                      :
MILFORD HOUSING AUTHORITY, ET         :
AL,                                   :
                                      :
    Defendants.                   :   APRIL 15, 2004

DEFENDANTS' OBJECTION TO PLAINTIFF'S
MOTION TO AMEND COMPLAINT

Pursuant to the Federal Rules of Civil Procedure and Local Rule 7, the Defendants hereby object to the Plaintiff's Motion to Amend the Complaint and respectfully submit the following Memorandum in Opposition. Granting the Plaintiff's Motion results in extensive delay and prejudice to the Defendants. Allowing the Plaintiff to amend the Complaint after discovery has closed and just prior to the Defendants filing a fully dispositive motion will force the Defendants to incur substantial additional expense. Finally, the Plaintiff has failed to show good cause for granting his Motion to Amend, as required by Rule 16 of the Federal Rules of Civil Procedure. And, given the Plaintiff's previous testimony and representations to the Court, the proposed Second Amended Complaint violates Rule 11 of the Federal Rules of Civil Procedure. Accordingly, the Plaintiff's second Motion to Amend his Complaint must be denied.

I.    **PRELIMINARY STATEMENT**

This action rises out of the Plaintiff's separation of employment from the Milford Housing Authority (the "MHA") in March of 2002. The Plaintiff's first Amended Complaint contains four counts alleging unlawful retaliation under the Fair Housing Act, 42 U.S.C. § 3617 (Count One) and common law claims for wrongful discharge in violation of public policy (Count

Two), breach of contract (Count Five), and breach of the covenant of good faith and fair dealing (Count Six).[1]

In his proposed Second Amended Complaint, the Plaintiff seeks to add two new counts alleging (i) violation of the Fair Housing Act, 42 U.S.C. § 3617, and (ii) violation of 42 U.S.C. § 1983. At the heart of these latest claims is an allegation that Defendant Vasiliou filed a lawsuit against the Plaintiff six days after the Plaintiff met with the U.S. Department of Housing and Urban Development ("HUD"), purportedly in retaliation for this interview.

As an initial matter, the Plaintiff's claim that Mr. Vasiliou's lawsuit is in retaliation for the Plaintiff's alleged support of the Fair Housing Act by speaking with HUD, who was conducting a procurement audit unrelated to implementation of the Settlement Agreement, strains credulity. Mr. Vasiliou's lawsuit was served just six days after the Plaintiff was allegedly interviewed by HUD. The Plaintiff does not allege that any of the Defendants were aware of this interview. Indeed, it is difficult to conceive that Mr. Vasiliou and the other Defendants somehow learned about the interview and the substance of the Plaintiff's alleged interview, obtained counsel, marshaled factual allegations, prepared a Complaint, and served it on the Plaintiff in less than one week.[2]

## II.   PROCEDURAL BACKGROUND

In September 2002, the Plaintiff filed the instant action in Connecticut Superior Court. The Plaintiff's Complaint alleged claims of retaliation under the Fair Housing Act 42 U.S.C. § 3617, wrongful discharge in violation of public policy, retaliation under Conn. Gen. Stat. § 31-51q, and retaliation under the First Amendment pursuant to 42 U.S.C. § 1983. The Defendants

---

[1] / As discussed below, in his Motion of Third Party Witness to Quash, filed December 8, 2003, the Plaintiff withdrew his claims under Conn. Gen. Stat. § 31-51q (Count III) and 42 U.S.C. § 1983 (Count IV).
[2] / It took the Plaintiff almost one month just to prepare the proposed Second Amended Complaint.

timely removed this case to Federal Court on or about October 29, 2002 and interposed an Answer on or about December 5, 2002.

Pursuant to Rules 16 (b) and 26(f) of the Federal Rules of Civil Procedure, the parties conferred and agreed to a Case Management Plan. The Court approved the parties' Plan and entered a Scheduling Order for this case on January 10, 2003. Discovery was ordered to be completed by October 15, 2003. The deadline for the Plaintiff file a motion to amend the Complaint, or join additional parties was set for January 1, 2003, and the deadline for filing dispositive motions was set for December 15, 2003.

On or about July 16, 2003, the Plaintiff filed <u>his first</u> Motion to Amend the Complaint, which sought to add two new counts alleging (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. The Court granted the Plaintiff's first Motion to Amend, over the Defendants' objection, on or about August 18, 2003. The Defendants filed an Amended Answer on September 18, 2003.

On or about October 10, 2003, the Court amended the Scheduling Order and ordered that all discovery be completed by December 15, 2003 and that all dispositive motions be filed by February 15, 2004. This extension of time was requested to permit the completion of depositions.

On or about December 8, 2003, the Plaintiff filed a Motion to Quash, objecting to the Subpoena the Defendants served on Dion Smith for the purpose of taking Mr. Smith's deposition. In the Plaintiff's Motion to Quash, the Plaintiff <u>withdrew</u> his First Amendment claims under 42 U.S.C. § 1983 and Conn. Gen. Stat. § 31-51q.[3]

---

[3] Specifically, the Plaintiff stated that "plaintiff does not intend to pursue those claims based upon information obtained through the discovery process." Plaintiff's Counsel confirmed that the Plaintiff intended to withdraw these claims during the court conference regarding this motion on January 20, 2004.

3

During a conference held on January 20, 2004 to resolve the Plaintiff's Motion to Quash, the Court heard the Plaintiff's objections, but denied the Motion to Quash, and ordered that Mr. Smith's deposition proceed.[4] The deposition was taken on February 26, 2004. Discovery was thereafter completed by March 1, 2004, in accordance with this Court's revised Scheduling Order,[5] and the Defendants are prepared to file a Motion for Summary Judgment by May 1, 2004.

On or about February 23, 2004, prior to the expiration of the statute of limitations applicable to his tort claims, Defendant Anthony Vasiliou filed an action in Connecticut Superior Court alleging claims of defamation, false light, intentional and negligent infliction of emotional distress against Mr. Hughes. Mr. Vasiliou is represented by Attorney David Metzger in that lawsuit. The other Defendants in this matter, the Milford Housing Authority and the five Commissioners, are not parties to Mr. Vasiliou's lawsuit, nor are those Defendants paying any of the legal fees associated with that action.

On or about March 23, 2004, the Plaintiff filed the instant Motion to Amend the Complaint, seeking to add two new Counts, (1) Count Seven - Retaliatory Violation of Fair Housing Act by Filing of Defamation Claim; and (2) Count Eight - Section 1983 Free Speech

---

[4]/ The Court entered a Protective Order requiring that portions of Mr. Smith's deposition be kept confidential and not be disclosed to Anthony Vasiliou, a named Defendant. The Defendants' Motion to Lift the Protective Order is currently pending. Also during that Conference, the Court amended its Scheduling Order and ordered that all discovery be completed by March 1, 2004, and set May 1, 2004 as the deadline for filing dispositive motions.

[5]/ Depositions were completed as follows:

| | | |
|---|---|---|
| Plaintiff Jack Hughes | Sept. 12, 2003 | Nov. 25, 2003 |
| Defendant Anthony Vasiliou | Sept. 17, 2003 | Nov. 25, 2003 |
| Karen Devito | Dec. 11, 2003 | |
| David Dunn | Nov. 13, 2003 | |
| Theresa Ewald | Oct. 7, 2003 | |
| Mary Margaret Mandell | Feb. 25, 2004 | |
| Dion Smith | Feb. 26, 2004 | |

4

Claim for Retaliatory Lawsuit.[6] Although the Plaintiff's new claims are based on Mr. Vasiliou's lawsuit, both claims are made against all the named Defendants herein, not just Mr. Vasiliou.

The Defendants now file their Objection and Memorandum in Opposition. The Plaintiff's Motion to Amend should be denied for the following reasons: (1) the Defendants will be prejudiced by the delay and costs resulting from the proposed amendments; (2) the Plaintiff's new claims are unsupported by the evidence; (3) the Plaintiff has failed to demonstrate good cause to amend the Complaint; and (4) the Plaintiff's proposed Second Amended Complaint violates Rule 11. The Defendants therefore respectfully request that the Plaintiff's Motion to Amend be denied.

## III. LEGAL ARGUMENT

### A. THE DEFENDANTS WILL BE SEVERELY PREJUDICED BY THE PROPOSED AMENDMENT.

Ordinarily, a plaintiff is permitted to amend his complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given where justice so requires." Fed. R. Civ. P. 15. A motion to amend the complaint should be denied, however, when "an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile." Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1198 (2d Cir. 1989). The Court has discretion to deny a motion to amend "where the motion is made after inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice" the non-moving party. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).

In determining "what constitutes 'prejudice,' [the Court should] consider whether the assertion of the new claim would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; or (2) significantly delay resolution of the

---

[6] Curiously, the Plaintiff took the trouble to move to amend the Complaint to add new claims but failed to omit those claims which he indicated his intent to withdraw several months earlier.

5

dispute." Block v. First Blood Assoc., 988 F.2d 344, 350 (2d. Cir 1993). Among the "most important considerations in determining whether [the] amendment would be prejudicial is the degree to which it would delay the final disposition of the action." Krumme v. Westpoint Stevens, 143 F.3d 71, 88 (2d. Cir. 1998). A proposed amendment is especially prejudicial when "discovery has already been completed and [the non-moving party] ha[s] already filed a motion for summary judgment." Id.; Kanyi v. United States, Docket No. 99CV5851(ILG), 2002 U.S. Dist. LEXIS 13545 (E.D.N.Y. 2002) ("Prejudice is especially likely to exist if the amendment involves new theories of recovery or would require additional discovery"). Denial of a motion to amend is "especially appropriate where it appears that [the Plaintiff's] purpose in asserting a new claim is [his] anticipation of an adverse ruling on the original claims. Juncewicz v. Patton, No. 01CV0519E, 2002 U.S. Dist. LEXIS 22651 * 29 (W.D.N.Y. 2002) (denying plaintiff's motion to amend filed just prior to setting of trial date). Here, based on the foregoing standard, the circumstances mandate that the Plaintiff's Motion to Amend be denied.

**1.      The Plaintiff Unreasonably Delayed in Filing His Motion to Amend.**

It was unreasonable for the Plaintiff to delay nearly a month before filing his Motion to Amend. The Plaintiff claims that he was interviewed by HUD in connection with a procurement audit[7] of the Milford Housing Authority and six days later, on February 25, 2004, he was served with a lawsuit brought by Mr. Vasiliou. (See Pl. Memo of Law, p., 4). At that point in time, upon order of this Court, the parties were concluding discovery in this matter, with the Defendants completing the depositions of Mary Mandell and Dion Smith on February 25 and 26, respectively. Discovery in this matter closed on March 1, 2004, a deadline which had been twice

---

[7] Notably, DOJ spurred by Hughes' publicly reported claims completed an investigation into allegations of noncompliance with the settlement agreement in 2002 and concluded no evidence existed to support that charge (Exhibit 1: White Dep. 34-42). Hughes apparently spoke to HUD on February 19, 2004, in connection with a procurement audit of the MHA, a matter which is unconnected to the present lawsuit. The audit which concerned the Settlement Agreement with HUD was completed long ago.

before extended. The Plaintiff then waited until March 23, 2004, nearly one month after receiving Mr. Vasiliou's lawsuit, to file his Motion to Amend. The deadline for filing dispositive motions is May 1, 2004, and at present, the Defendants are prepared to file a Motion for Summary Judgment seeking dismissal of all of the Plaintiff's claims. Under these circumstances, the Plaintiff waited an excessive and unreasonable amount of time to seek leave from the Court to file a Second Amended Complaint.

The Plaintiff presented no valid explanation for the excessive delay. Instead, the Plaintiff asserts that he acted timely. Given the history of this case and the impending deadlines for completing discovery and filing dispositive motions, the Plaintiff's delay was inexplicable and excessive. Where the Plaintiff has unreasonably delayed in seeking leave to file an amended complaint, and "there [is] no justification for the delay... and because there is evidence that the addition of each claim would prejudice plaintiffs," denial of the motion to amend is appropriate. See Classicberry Ltd. v. Musicmaker.com, Inc., 48 Fed. Appx. 360, 362, 2002 U.S. App. LEXIS 21619 (2d Cir. 2002) (denying motion to amend counterclaim for defendant's failure to provide adequate justification for delay).

### 2. Repeating the Discovery Process Will Excessively Delay Resolution of This Matter and Impose Unnecessary Additional Costs.

Should the Plaintiff's Motion to Amend be granted, the Defendants will be greatly prejudiced by repetition of the discovery process. Specifically, the Court will be required to reopen discovery, and the Defendants will be forced to carry out additional costly written discovery and depositions. The deadline for completing discovery, including two prior extensions, expired on March 1, 2004. Nine depositions have been taken, including the Plaintiff on two occasions. The Defendants have already obtained, reviewed, copied and produced over 1,600 documents, in addition to reviewing myriad documents received from the Plaintiff.

7

Allowing these amendments to go forward would require that the Defendants begin the discovery process anew, reviewing production requests and revisiting production responses and deposition inquiries. The Defendants will also be forced to prepare and serve written interrogatories and requests for production and take the Plaintiff's deposition a third time.[8] These actions will require time and money.

The Plaintiff intends to engage in significant additional discovery as well. According to the Plaintiff, to support his new claims, he plans to serve additional interrogatories and production requests. The Plaintiff estimated that these would require at least sixty (60) days to complete. The Defendants anticipate that the Plaintiff may also seek to take additional depositions. Thus, the Plaintiff's discovery alone will cause significant delays.

In addition to the delays associated with repeating the discovery process as well as any motions necessitated by discovery or the new pleadings, the Defendants will be forced to incur significant additional expense to carry out this discovery. Forcing the Defendants to bear the cost of repeating the discovery process on the Plaintiff's new claims is highly prejudicial and warrants that the Motion to Amend be denied. See Kanyi v. United States, Docket No. 99CV5851(ILG), 2002 U.S. Dist. LEXIS 13545 (E.D.N.Y. 2002) (denying motion to amend complaint considering among other factors, "whether the opposing parties would be required to expend significant additional resources to conduct discovery and prepare for trial on the new claim").

---

[8]/ The Plaintiff states in his motion that no discovery is needed by the Defendants because all of the information relative to the Amendments is within the Defendants' purview. The Plaintiff is wrong. For instance, the Plaintiff's claim requires that the Defendants knew of Mr. Hughes' conversation with HUD on February 19, 2004. The Defendants are entitled to determine the circumstances under which Plaintiff contends that the Defendants were informed of that meeting and the substance of that meeting which apparently occurred in the context of a procurement audit. Discovery in that area would be critical to establishing liability for retaliatory behavior as well as determining whether the Plaintiff meets the standard under the First Amendment for addressing a matter of "public concern." At a minimum, the Plaintiff must be deposed for a third time.

### 3. Allowing the Plaintiff's Amendments Will Force the Defendants to Reassess Their Litigation Strategy and Engage in Further Motion Practice.

By filing his Motion to Amend at this late stage of the litigation, the Plaintiff's proposed Second Amended Complaint is an unfair ambush that forces the Defendants to reassess their defense strategy just prior to their filing a Motion for Summary Judgment. No discovery has yet been conducted and the Defendants cannot possibly assess the likelihood of success on Summary Judgment as to these new claims. The Defendants will therefore be required to assess the sufficiency of the new claims, and if necessary, file a Motion to Dismiss before proceeding with additional discovery and their Motion for Summary Judgment.

The Plaintiff has twice before altered his Complaint. Most recently, in December 2003, the Plaintiff withdrew two claims which alleged retaliation for exercise of free speech based on Conn. Gen. Stat. § 31-51q and 42 U.S.C. § 1983. Since then, the remaining witness depositions were completed, discovery has closed, and the Defendants have substantially prepared their Motion for Summary Judgment seeking dismissal of the remaining four counts. The Plaintiff now seeks to add two new claims, one of which attempts to reintroduce a cause of action under 42 U.S.C. § 1983, while the second would significantly broaden the scope of the existing claim under Section 3617.

Adding these new claims at this late stage is unfair and costly. First, the Defendants cannot proceed with the filing of a Motion for Summary Judgment until after additional discovery is conducted and the present amendment dispute is resolved. Second, if the proposed amendment is granted, the Defendants must assess whether the Plaintiff's new claims are subject to dismissal for failure to state a claim under Federal Rule 12(b)(6). Given that the Plaintiff brings his latest claims against all of the named Defendants, yet alleges only that Mr. Vasiliou

9

filed the allegedly retaliatory lawsuit, such a motion seems likely, which will result in further delay and costs.

Furthermore, when the Plaintiff previously withdrew his § 1983 claim, the Defendants ceased conducting discovery or analysis to support their potential defenses under the doctrines of absolute or qualified immunity. These and numerous other issues will be resurrected should the Plaintiff's amendment be granted.

In short, allowing the Plaintiff's amendments to proceed will essentially restart the engine of this contentious, costly litigation, which had only recently been arrested with the close of discovery. Allowing such a development at this stage of litigation is untenable and the motion must be denied.

### 4. The Plaintiff's Proposed Amendment is Made Only to Cause Delay in Anticipation of an Adverse Ruling on the Defendants' Impending Motion for Summary Judgment.

The Plaintiff's proposed claims are without factual support. Both of the Plaintiff's proposed claims allege retaliation under (1) the Fair Housing Act, 42 U.S.C. § 3617; and (2) 42 U.S.C. § 1983 based on Mr. Vasiliou's state court lawsuit against Mr. Hughes. These claims are likely subject to dismissal for failure to state a claim under Federal Rule 12(b)(6). For example, as presently alleged, neither of these claims states sufficient facts to show that any of the Defendants had notice, or were otherwise even aware of the Plaintiff's alleged interview with HUD. Thus, the Plaintiff cannot even establish a *prima facie* case of retaliation. Absent this crucial fact, the Plaintiff cannot possibly demonstrate a retaliatory intent by the Defendants, and these claims are likely to be dismissed. Further, the Plaintiff has alleged his claims against all the named Defendants in this action, despite the fact that only Mr. Vasiliou filed a lawsuit against the Plaintiff, the allegedly retaliatory action taken against the Plaintiff. Thus, at least as

to the Defendants other than Mr. Vasiliou, the Defendants must consider and research the propriety of a Motion to Dismiss on that basis.

As illustrated by the flaws in the proposed Second Amended Complaint, the Plaintiff's Motion to Amend appears to be solely for the purpose of delaying resolution of the Defendants' Motion for Summary Judgment. The testimony adduced during the Plaintiff's deposition disproved many of the critical factual allegations contained in the Complaint.[9] Obviously aware of this development, the Plaintiff now seeks to add an entirely new theory – adverse retaliatory action based on Mr. Vasiliou's lawsuit – to keep his federal retaliation claim alive before this Court. This new theory seeks to incorporate events occurring a full two years after the Plaintiff was terminated. Clearly, such claims greatly expand the scope of the present litigation, which has been litigated, meditated and treated for discovery purposes as a dispute arising from the Plaintiff's separation from employment over two years ago.

It is well established in the Second Circuit that "denial of leave to amend is especially appropriate where it appears that a [party's] purpose in asserting a new claim is [its] anticipation of an adverse ruling on the original claims." See Harris Corp. v. McBride & Assocs., Docket No. 01-CV-0106E, 2002 U.S. Dist. LEXIS 13342 (W.D.N.Y. 2002); Ansam Associates, Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985) (denying motion to amend). "Where it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend." Bymoen v. Herzog, Heine, Geduld, Inc., Docket No. 88CIV1796 (KMW), 1991 U.S. Dist. LEXIS 7169 (S.D.N.Y. 1991);

---

[9]/ For example, during his deposition the Plaintiff admitted that the factual allegations made in Paragraphs 16 and 17 of the Amended Complaint were not accurate. Specifically, these paragraphs contain allegations that Mr. Vasiliou made specific statements that he "had no intention of complying with the [HUD settlement] agreement. See Am. Compl. ¶¶ 16-17. Plaintiff admitted when asked, that these alleged statements were not the words used by Mr. Vasiliou. (Exhibit 2: Pl. Dep., pp. 66-67, 74). The deposition of Theresa Ewald, a third party witness also yielded testimony that severely damages the Plaintiff's case. Ms. Ewald testified that the decision to eliminate the Plaintiff's position occurred well before the Plaintiff's alleged protected activity. (See Exhibit 3: Ewald Dep., pp. 21-22, 44-46).

11

citing Reisner v. General Motors Corp., 511 F. Supp. 1167, 1172 (S.D.N.Y. 1981), aff'd, 671 F.2d 91 (2d Cir.), cert. denied, 459 U.S. 858 (1982).

In Ansam Associates, the Court denied a plaintiff's motion to amend, where the plaintiff sought to add claims based on an entirely new set of facts concerning a different time period. Ansam Associates, Inc, 760 F.2d at 446. Reasoning that the Plaintiff's original Complaint did not relate to or provide fair notice of the subsequent claims, the Court concluded that "the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [the defendant] had already filed a motion for summary judgment." Id., at 446.

The situation here is comparable to that which occurred in the above cases. Discovery has been completed and the Defendants are prepared to file their Motion for Summary Judgment seeking dismissal of all counts. The Plaintiff, well aware that his deposition testimony yielded numerous damaging admissions, now seeks to add new claims in an effort to avoid dismissal of his Complaint. The Motion should thus be denied.

### 5. The Totality of Factors Weigh In Favor of Denying the Plaintiff's Motion to Amend.

The circumstances of this case reflect that allowing the Plaintiff's proposed amendment to proceed will (1) significantly delay the resolution of this matter, (2) impose substantial additional costs on the Defendants, and (3) force the Defendants to overhaul their litigation and defense strategy. In addition, the Plaintiff unreasonably delayed in the filing of his Motion and only seeks the proposed amendments in a vain attempt to save his Complaint from Summary Judgment. Under these circumstances, allowing the proposed Second Amended Complaint to proceed would unduly prejudice the Defendants.

Courts have denied motions to amend under similar circumstances. In <u>Cuccolo v. Lipsky, Goodkin & Co.</u>, No. 92CV2716, 1994 U.S. Dist LEXIS 9962 (W.D.N.Y. 1994), the district court denied the plaintiff's motion to amend based on several factors, many of which are present in this matter. Specifically, the court found that the proposed amendment would (1) significantly broaden the claims against the defendants; (2) require additional discovery; (3) may require a different litigation strategy by defendants; (4) discovery was complete and the case was ready for disposition; and (5) plaintiff had given inadequate reason for the delay. <u>Id.</u>, at *3-4. The Plaintiff's proposed Second Amended Complaint presents these same problems and must be denied.

### B. PLAINTIFF DID NOT SATISFY THE GOOD CAUSE STANDARD FOR ALLOWING AN AMENDED COMPLAINT TO BE FILED.

The Plaintiff's Motion to Amend should be denied because the Plaintiff has not made the required particularized showing to demonstrate good cause why an amendment should be granted at this late stage of the case. Pursuant to Rule 16(b), the Court shall "enter a Scheduling Order that limits the time to (1) join other parties and to amend the pleadings; (2) to file motions; and (3) to complete discovery." Fed. R. Civ. P. 16(b). That Rule provides further, "that schedule shall not be modified except upon a showing of good cause and by leave of the district judge…" Fed. R. Civ. P. 16(b). This Court approved the parties' Case Management Plan and entered a Scheduling Order in this case on January 10, 2003. As Plaintiff's Motion to Amend essentially requires the Court to amend the deadlines set forth in the Scheduling Order, Plaintiff must therefore satisfy the "good cause" standard set forth in Rule 16(b) for his Motion to be granted.

Plaintiff's Motion contains no "particularized showing" and clearly does not satisfy the good cause standard. In fact, the Plaintiff incorrectly relies on Rule 15 of the Federal Rules of Civil Procedure asserting that "leave [to amend] shall freely be given when justice so requires."

Fed. R. Civ. P. 15(a). Although the Plaintiff has quoted the Rule 15 standard, the Defendants have refuted that approach. Under the circumstances of this case, and specifically based on the fact that the deadline for amending the Complaint set forth in this Court's Scheduling Order has long since expired, it is the heightened good cause standard set forth in Rule 16 that applies.

According to the Federal Rules of Civil Procedure, any deadlines instituted therein "shall be strictly enforced and shall not be modified by the court, even upon stipulation of the parties, except upon a showing of good cause." LaFlamme v. Carpenters Local #370 Pension Plan, Docket No. 01-CV-640, 2003 U.S. Dist. LEXIS 24430 (NDNY 2003). Whether "good cause" exists depends upon the diligence of the moving party. See Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (affirming denial of scheduling order modification where moving party delayed over year before seeking to amend pleading, discovery was finished, and a summary judgment motion was pending).

The Second Circuit has provided guidance regarding the good cause standard. It is a heightened standard as compared with the standard for granting other motions. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-340 (2d Cir. 2000) (comparing the "good cause" standard in F.R.C.P. 16(a)(6) with the more lenient standard of F.R.C.P. 15(a)). Under Federal Rule 16(a)(6), a scheduling order "shall not be modified *except upon a showing of good cause.*" Fed. R. Civ. P. 16(a)(6) (Emphasis added). Interpreting Rule 16's good cause standard, the Second Circuit has joined other circuits which recognize there to be a heightened burden. See Parker, 204 F.3d at 339-340 (citing Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."); In re Milk Prods. Antitrust Litig., 195

F.3d 430, 437 (8th Cir. 1999), cert. denied, 529 U.S. 1038 (2000) ("When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order."); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992) ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation and its standards may not be short-circuited by an appeal to those of Rule 15."); Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-55 (1st Cir. 1992) (refusing to allow an amendment after the scheduling order deadline despite the lenient standards of Rule 15(a) because "the allowance of an amendment would have nullified the purpose of rule 16(b)(1)").

Here, the Plaintiff has made no particularized showing to support good cause. The Plaintiff argues that unless his amendment is permitted to go forward he will be required to litigate in a "distant forum and venue chosen by the Defendants" or "bring a third lawsuit." (See Pl. Memo of Law, at page 6). Neither of these considerations is relevant to the case at hand.

The Plaintiff claims that it would be unfair to require him to litigate the proposed additional claims in a distant forum or venue, which he identifies as Middletown, the Judicial District in which a lawsuit was filed by Mr. Vasiliou against the Plaintiff. It is unclear how the Plaintiff expects that the proposed amendments in this lawsuit will have any impact on his being required to appear and/or litigate Mr. Vasiliou's claim in Middletown. This Court's ruling on the Plaintiff's Motion to Amend will do nothing to change the forum or venue of Mr. Vasiliou's lawsuit against the Plaintiff. Further, even if the Plaintiff believes the Judicial District of Middletown to be prejudicial to his interests, this is not the proper forum to voice those concerns.

The Plaintiff does not, and cannot, dispute that Mr. Vasiliou's lawsuit against him is a separate and independent action. Other than Mr. Vasiliou, the other named Defendants in this action are not involved in any way. The Plaintiff has not sought to have Mr. Vasiliou's lawsuit joined with this matter. He only appears to claim that it would be unfair for him to be required to litigate the proposed amended claims in Middletown, Connecticut. This argument does not provide good cause for granting the Motion to Amend.

The Plaintiff further asserts that it would be unfair to require him to file a third lawsuit, although he offers nothing to support this assertion. The Plaintiff's argument that he should be permitted to file the proposed Second Amended Complaint appears to be premised on factors and circumstances entirely separate and irrelevant to the history of the present litigation. Moreover, the circumstances relied on by Plaintiff fail to support the necessary showing of good cause for granting his Motion. Accordingly, the Defendants request that the Plaintiff's Motion to Amend be denied.

### C. THE PLAINTIFF'S PROPOSED SECOND AMENDED COMPLAINT CANNOT PROCEED BECAUSE IT VIOLATES RULE 11.

The proposed Second Amended Complaint re-alleges claims (Counts Three and Four) which the Plaintiff previously withdrew because they were unsupported by the evidence. The Plaintiff also re-alleged certain factual assertions (Paragraphs 16 and 17) which he admitted were vnot true during his deposition. The Plaintiff has an obligation under Rule 11 to make only those claims and factual contentions which have evidentiary support and are warranted by existing law. The Second Amended Complaint fails to meet that standard.

In December 2003, the Plaintiff filed a Motion of Third Party Witness to Quash, dated December 8, 2003, in which he withdrew the Third and Fourth Counts of the Amended Complaint, alleging violations of Conn. Gen. State § 31-51q and 42 U.S.C. § 1983. Specifically,

the Plaintiff stated in his Motion that these claims were being withdrawn "based upon information obtained through the discovery process." (See Plaintiff's Memorandum in Support of Motion of Third Party Witness to Quash, December 8, 2003, at p. 2, fn. 1). The Plaintiff's Counsel confirmed this withdrawal during a conference with the Court on January 20, 2004. Those claims are re-stated and re-alleged in the proposed Second Amended Complaint filed with the Plaintiff's Motion to Amend.

In addition, the Plaintiff admitted during his deposition that the allegations in Paragraphs 16 and 17 of the Amended Complaint were not accurate. In his first Amended Complaint, the Plaintiff alleges that Mr. Vasiliou said he "had no intention of complying with the [HUD Settlement] Agreement," and that he would avoid compliance by "spending the money on 'soft' costs, such as architects." See Am. Compl., ¶¶ 16-17. When Plaintiff was asked during his deposition if Mr. Vasiliou had actually used the words, "he had no intention of complying with the Agreement," as quoted in the Amended Complaint, the Plaintiff replied, "Not the way you're saying it, no." (Exhibit 2: Pl. Dep., pp. 66-67). When asked again whether Mr. Vasiliou actually said that "he would avoid compliance with the [Agreement] by spending money on soft costs," Plaintiff admitted, "Not specifically, no." (Exhibit 2: Pl. Dep., p. 74). As the allegations in Paragraphs 16 and 17 are clearly untrue, the Plaintiff should have withdrawn them when he submitted his proposed Seconded Amended Complaint.

The Plaintiff's proposed Second Amended Complaint cannot be permitted to go forward as it violates Rule 11 of the Federal Rules of Civil Procedure. "By presenting to the Court (whether by signing, filing, submitting or later advocating) a pleading, written motion, or other paper, an attorney... is certifying that to the best of the person's knowledge, information and belief, formed after a reasonable inquiry under the circumstances... (2) the claims, defenses, and

other legal contentions therein are warranted by existing law… and (3) the allegations and other factual contentions have evidentiary support…" See Fed. R. Civ. P. 11. Because the proposed Second Amended Complaint violates the clear mandate of Rule 11 of the Federal Rules of Civil Procedure, the Plaintiff's Motion to Amend should be denied.

## IV.   CONCLUSION

WHEREFORE, based on the balance of factors outlined above, the Defendants respectfully request that the Plaintiff's Motion to Amend be denied.

DEFENDANTS,
MILFORD HOUSING AUTHORITY, ANTHONY VASILIOU, RICHARD ANDERSEN, HILARY HOLOWINK, JOHN AMENTA, EDWARD CANELLI, JACK TUCCIARONE,

By: _____
Michael G. Petrie (ct 22789)
Richard F. Vitarelli (ct 15145)
Anne Noble Walker (ct 11637)
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299
Email: mpetrie@rc.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 15th day of April, 2004 to:

Lewis H. Chimes, Esq.
Garrison, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511

                                                  _____
                                                  Michael G. Petrie