UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN HUGHES,<br>    Plaintiff, | CIVIL NO. 302CV1917 (MRK) |
| V. | |
| MILFORD HOUSING AUTHORITY,<br>ANTHONY VASILIOU, RICHARD<br>ANDERSEN, HILARY HOLOWINK, JOHN<br>AMENTA, EDWARD CANELLI AND JACK<br>TUCCIARONE,<br>    Defendants. | SEPTEMBER 15, 2004 |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.   **Defendants are Entitled to Summary Judgment on Count One (Plaintiff's Termination of Employment as Unlawful Retaliation for His February 2002 conversation with Architect Kuncas).**

   A.   **It is Undisputed that Plaintiff did not Engage in Protected Activity Prior to His Separation of Employment.**

Faced with uncontradicted evidence that the decision to eliminate his position was made well before his alleged protected activity, Plaintiff attempts to "save" his FHA claim in the First Count by expanding, at the eleventh hour, the scope of his alleged protected activity during his employment. Specifically, Plaintiff now alleges in an affidavit (See Exhibit 17, ¶ 7, attached to Plaintiff's Opposition hereinafter "Hughes Aff.") that he questioned payments to a consultant, John D'Amelia. This effort to save the First Count fails as a matter of law.

First, any allegation that Plaintiff was terminated because of complaints made about D'Amelia is plainly and flatly contradicted by Plaintiff's own very specific testimony that he was terminated because of the statements he made to Kuncas. (Pl. Dep., pp. 62, 91). It is therefore absurd to suggest a causal connection between any statements about D'Amelia's bills and Plaintiff's separation of employment.

HART1-1204905-1

Second, merely questioning D'Amelia's invoices would not rise to the level of protected activity because such conduct would have been part of Plaintiff's responsibility to analyze D'Amelia's work. Plaintiff himself admitted that his job duties included assessing cost overruns. (Pl. Dep., p. 236). There is no evidence to suggest that such "questioning" aided or encouraged others in the exercise of FHA rights, and, accordingly, such conduct lacks a direct connection with the sale, rental, or occupancy of housing as required by § 3617 of the FHA. Clearly, such conduct, even if it occurred, was not protected activity sufficient to save the First Count.

Third, Plaintiff's deposition testimony contradicts his latest contention that Plaintiff took issue with D'Amelia's bills and, therefore, engaged in protected activity while employed at the MHA. More specifically, Plaintiff asserts that "on certain occasions [he] questioned the propriety of payments to John D'Amelia during periods of inactivity" and that Vasiliou told him "not to question Mr. D'Amelia's bills, just to pay them." (See Hughes Aff., ¶¶ 7-8). During his deposition, however, Plaintiff failed to testify that he protested D'Amelia's bills, even though he was questioned whether he ever complained about excessive contractor costs, or ever did anything to aid or encourage others in the exercise of their fair housing rights. (See Pl. Dep., pp. 86, 118-119, 228-31). In fact, Plaintiff testified that he never complained to anyone about what he considered excessive costs and acknowledged that the amounts paid to architects and other contractors were within budget. (See Pl. Dep., pp. 118-19, 228-31).

Paragraphs 7 and 8 of his Affidavit, which manufacture new "protected activity," directly contradict Plaintiff's prior testimony and must therefore be disregarded. It is well settled that a party's affidavit contradicting his own prior deposition testimony cannot create a genuine issue of material fact and must be disregarded for purposes of deciding a motion for summary judgment. See Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987); McLaughlin v. Cohen,

686 F. Supp. 454, 456 (S.D.N.Y. 1988) citing <u>Permaresearch and Development Company v. Singer Company</u>, 410 F.2d 572, 578 (2d Cir. 1969) (A party cannot defeat a motion for summary judgment by submitting an affidavit contradicting his prior deposition testimony.)

Not only do the allegations about this new "protected activity" contradict Plaintiff's prior deposition testimony, but they are also unsupported by evidence in the record. For instance, Plaintiff claims that "[a]t various times during the implementation of the settlement agreement, Hughes questioned the wisdom of certain spending that depleted the HUD development fund." (<u>See</u> Plaintiff's Opposition, p. 14). Plaintiff further asserts that "throughout his employment, he questioned excessive spending on soft costs and overpayment for properties during the acquisition process that would diminish the amount of funds that would be available to acquire and develop housing." (Plaintiff Opposition, p. 24.) These allegations are made with no citation to the record. Such statements in the Plaintiff's Opposition amount to merely Plaintiff's counsel's opinion of the evidence and, accordingly, should not be considered by the Court. <u>See e.g.</u> <u>United States v. Potamkin Cadillac Corp.</u>, 689 F. Supp. 379 (2d Cir. 1982) (Unsupported assertions by attorneys are not capable of repelling summary judgment); <u>Schoch v. First Fidelity Bank</u>, 912 F.2d 654, 657 (3rd Cir. 1990) (Unsworn statements of counsel and memoranda submitted to the court less effective in meeting the requirements of Rule 56(e) than other unsupported allegations of the pleadings.)[1]

---

[1] This lack of evidence is presumably why Plaintiff prepared an affidavit, claiming that "[o]n certain occasions, [he] questioned the propriety of payments" to D'Amelia. <u>See</u> Hughes Aff., ¶ 7. Notably absent from Plaintiff's affidavit is any detail regarding *when* he engaged in such questioning, *what* was said, *where* it occurred, *to whom, how often*, and the *reason why* he did so, if any. Lacking such details, Plaintiff's assertion is simply too vague and conclusory to repel the evidence produced by the Defendants. "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." <u>Bickerstaff v. Vassar Coll.</u>, 196 F.3d 435, 452 (2d Cir. 1999).

### B. Plaintiff has not Raised a Genuine Issue of Material Fact Regarding His Separation of Plaintiff's Employment.

Plaintiff attempts to suggest that there is a factual issue regarding the reorganization of the Milford Housing Authority in 2002 by pointing to the hiring of John Schukoske (Clerk of the Works) and the alleged budgetary impact of that hiring. In his Opposition, Plaintiff claims that Schukoske replaced him and that there was no budgetary savings resulting from Schukoske's hiring. Thus, Plaintiff asserts, the reason for his separation must be a pretext. This argument is contradicted and rendered meaningless by Plaintiff's own admissions that Schukoske did not replace him. Indeed, Plaintiff testified that his own role was _different_ from that of the Clerk of the Works. (Pl. Dep., p. 194.) The Clerk of the Works remained at the job site full-time, whereas Plaintiff would not have the time to do that. (Pl. Dep., p. 194). In fact, Plaintiff testified that he believed he would have hired a Clerk of the Works and that individual would report to him. (Pl. Dep., pp. 193-196). He further testified that Mark Bakstis, one of D'Amelia's consultants, served as the Clerk of the Works before Schukoske was hired. (Pl. Dep., pp. 194-196). In light of these admissions, Plaintiff cannot now argue that Schukoske replaced him as a means of creating a factual dispute regarding his separation of employment.

Indeed, a disingenuous presentation of the record flows throughout Plaintiff's Opposition. The Court should not be distracted by Plaintiff's attempts to salvage his fruitless claims by suggesting wrongdoing on behalf of the Defendants. For instance, at the bottom of page 23 of Plaintiff's Opposition, Plaintiff states "to the extent that Mr. Vasiliou and the Defendants sought to undermine the Settlement Agreement and minimize the number of low income housing units that were built, it violated the FHA." This assertion is unsupported and blatantly contradicted by Attorney White's testimony that she could not substantiate Plaintiff's allegations that Vasiliou did anything improper. (White Dep., pp. 38-42). Similarly, Hughes' allegations that soft cost

spending was excessive is belied by his own testimony that MHA was within budget on its consultant and architectural fees and that he did not disagree with the budgeted amounts. (Pl. Dep., pp. 229-230). When the facts supported by the record, and not prejudicial exaggerated opinion, are carefully analyzed in this case, summary judgment is clearly appropriate.

**II.     Plaintiff Produced no Evidence to Establish a Causal Connection in Support of His Claim in Count Seven (Unlawful Retaliation by Filing of Defamation Lawsuit).**

Plaintiff's legal arguments in support of his retaliation claim in the Seventh Count are similarly deficient. Plaintiff cites four instances of alleged protected activity and asserts that a causal connection exists between such activity and Vasiliou's separate lawsuit against the Plaintiff, filed in February 2004. Three of the events alleged as protected activity are far too remote in time (at least sixteen months prior to the Vasiliou lawsuit) to support a causal connection with the 2004 defamation lawsuit, and the fourth event was not known to the Defendants at the time the Vasiliou lawsuit was filed. Summary judgment is thus also warranted on Count Seven.

"Causation may be shown either directly, through evidence of retaliatory animus by the person who initiated the adverse action against plaintiff, or indirectly, by showing that the retaliatory action was taken <u>shortly after</u> the protected activity" occurred. <u>Hill v. Citibank Corp.</u>, 2004 U.S. Dist LEXIS 5069 at * 36 (S.D.N.Y. 2004) (emphasis added). The causal connection "can be established indirectly by showing that the protected activity was <u>closely followed in time</u> by the adverse action." <u>Reg'l. Econ. Cmty. Action v. City of Middletown</u>, 294 F.3d 35, 44-45 (2d Cir. 2002) (emphasis added). Here, three of the events relied on by Plaintiff to show protected activity occurred between July and October 2002 – <u>over sixteen (16) months before</u> Vasiliou's lawsuit was filed. Given that Plaintiff has produced no other evidence to suggest causation, these events are simply too far removed to demonstrate a causal connection. <u>See</u>

Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 274 (2001) (Where "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is relied upon "the temporal proximity must be 'very close.'") Even assuming Plaintiff's actions constituted protected activity, a delay of sixteen months "suggests, by itself, no causality at all." Id. (twenty month gap too great to show causal connection); see also Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990) (three-and-a-half month period insufficient); Castro v. Local 1199, Nat'l Health & Human Servs. Employees Union, 964 F. Supp. 719, 729 (S.D.N.Y. 1997) (one-year period insufficient).

The fourth instance relied on by Plaintiff also fails to demonstrate a causal connection because Plaintiff has not refuted that the Defendants were unaware of Plaintiff's meeting with HUD, much less what Plaintiff discussed during that meeting, before Vasiliou's lawsuit was filed. Plaintiff states merely that Dion Smith, an MHA employee, was aware that HUD met with Plaintiff. (See Pl. Memo., p. 30). Notably, Plaintiff provides no evidence that Smith communicated that information to any of the Defendants. In fact, during his deposition, Plaintiff stated only that he "may have" spoken to Smith about the meeting with HUD, and if anything merely told Smith that he "had the interview." (Pl. Dep., Vol. III, pp. 21, 29). Plaintiff further admitted that he had "no idea" whether Vasiliou or the other Defendants knew of his meeting with HUD. (See Pl. Dep., Vol. III, p. 30). Although Plaintiff further asserts that there was "a fair amount of press coverage" surrounding Plaintiff's remarks, Plaintiff produced no evidence that there was press coverage regarding his meeting with HUD in February 2004.[2] (See Pl. Memo. p. 30). Plaintiff's assumption that, because he told Smith that he had the interview and there was press coverage in October 2002, the Defendants therefore knew of the February 2004 meeting is

---

[2]/ Presumably, Plaintiff is referring to press coverage which resulted after he spoke with a Connecticut Post reporter in October 2002. As discussed above, that event is too far removed to support a causal connection with the defamation lawsuit of February 2004.

simply too speculative to create an issue of material fact. Rohan v. American Bar Ass'n, 1996 U.S. App. LEXIS 2903 (2d Cir. 1996) ("a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.")

Standing in stark contrast to Plaintiff's complete failure to produce any evidence, the Defendants made a substantial showing that they in fact were not aware of the Plaintiff's meeting with HUD when Vasiliou's lawsuit was filed. (See Vasiliou Aff., ¶ 9; Canelli Aff., ¶ 8; Amenta Aff., ¶ 4; Holowink Aff., ¶ 4; Tucciarone Aff., ¶ 4; D'Iorio Aff., ¶ 4). Given the considerable amount of evidence produced by the Defendants, Plaintiff cannot demonstrate that the alleged adverse action, Vasiliou's lawsuit, was *because of* his meeting with HUD personnel. See James v. Newsweek, Inc., 2000 U.S. App. LEXIS 8805 at *3 (2d Cir. 2000) (Plaintiff must demonstrate that Defendants were "aware of Plaintiff's participation in the protected activity.").

Moreover, the Defendants have also produced uncontroverted evidence to show that Vasiliou initiated the process of bringing his lawsuit in December 2003 – well before the Plaintiff's meeting with HUD. (See Vasiliou Aff., ¶ 10). Plaintiff does not dispute this fact. Clearly no causal connection can be shown to exist between Plaintiff's attendance at a meeting with HUD and Vasiliou's lawsuit. City of Middletown, 294 F.3d at 44-45 (Causal connection can be shown where "protected activity was closely followed in time by the adverse action.").

### III. The Defendants are Entitled to Summary Judgment on Count Eight (Free Speech Claim).

#### A. There is No Evidence to Establish a Causal Connection in Support of Plaintiff's Free Speech Claim.

Like the Seventh Count, the Eighth Count also fails due to the Plaintiff's failure to produce any evidence that the Defendants were aware of his meeting with HUD prior to the Vasiliou lawsuit being filed and also because it is undisputed that Vasiliou began the process of filing that suit long before the Plaintiff's meeting with HUD.

B.  **As a matter of Law, the Filing of a Lawsuit does not Constitute Action Under Color of State Law.**

Plaintiff asserts that Vasiliou's filing of a lawsuit constitutes a violation of his right to free speech and gives rise to a cause of action under 42 U.S.C. § 1983. Because the filing of a lawsuit does not require state action or the use of governmental power, this claim fails as a matter of law. "The 'under color of state law' element is essential because section 1983 focuses on the 'misuse' of governmental power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Mabe v. City of Galveston, 635 F. Supp. 105, 107 (S.D. Tx. 1986) (lawsuit brought by a city "is in the nature of a private action, and as such, does not implicate § 1983 relief"). Filing a lawsuit is not action under color of state law because "[a]ny citizen can seek access to the Courts to redress his or her grievances. Indeed, that is the core of the First Amendment's protection." Id. A private actor initiating a law suit, even if done in bad faith, "does not act under color of state law unless state law compels his action or gives him the authority or pretense of authority to act." Id. Accordingly, Plaintiff's Section 1983 claim in the Eighth Count fails as a matter of law.

IV.  **The Personnel Policy Manual Did Not Create an Implied Contract.**

The Plaintiff's reliance on Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1 (1995), to show that the MHA Personnel Policy Manual constituted an implied employment contract is misguided and erroneous. There, the Connecticut Supreme Court held:

> When an employer issues an employment manual that confers on an employee greater rights than he or she previously had, the employee's continued work for the employer thereafter ordinarily demonstrates that the employee has accepted that offer of new rights...
>
> When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, however, the employee's continued work

> after notice of those terms cannot be taken as conclusive evidence
> of the employee's consent to those terms.

Torosyan, 234 Conn. at 18. Plaintiff claims that his mere continued employment after the Personnel Manual was updated in 2001 vitiated his status as an at-will employee. This claim is flawed because the factual circumstances in Torosyan are wholly distinguishable from those in the present case. In addition, there is simply no evidence that an update to the Policy Manual in 2001 suddenly created an implied contract of employment, particularly in light of Plaintiff's admission of his at-will status on his employment application and the issuance of an at-will disclaimer at the time the 1999 Manual was distributed to Plaintiff.[3]

The Plaintiff received and signed for a Personnel Policy Manual in January 1999, accompanied by a clear and conspicuous disclaimer. (See Exhibit 4, attached to Def. Memo). Plaintiff does not deny this.[4] In fact, as a matter of law, the 1999 Manual did not create an implied contract. Schermerhorn v. Mobil Chem. Co., 2001 U.S. Dist. LEXIS 519 (D. Conn. 2001) (An implied contract claim "based upon the terms of an employee handbook must fail if the handbook contained an effective disclaimer."). In addition, Plaintiff acknowledged in his employment application that his employment with MHA would be at-will. (See Exhibit 15, attached to Def. Memo). It cannot be credibly disputed that the Plaintiff was hired by the Housing Authority as anything but an employee at-will. (See Pl. Dep., pp. 22-25).

Plaintiff points to no evidence, beyond his continued employment, to suggest that the distribution of an updated Manual in 2001 was, or should be considered after the fact, to have created an implied contract of employment. It is well-settled that Plaintiff must present "evidence that [the Defendants]... agreed to some form of actual contract commitment." Burnham v. Karl

---

[3]/ Notably, when confronted with both Manuals in his deposition, Plaintiff testified adamantly that he relied on the '99 Manual. (Hughes Dep., pp. 47-48).

[4]/ Note that the Plaintiff does not admit that he did not get a similar disclaimer in 2001. Plaintiff relies on DiVito's testimony to suggest that disclaimer was not distributed.

& Gelb, P.C., 50 Conn. App. 385, 388, 717 A.2d 811 (Conn. App. 1998). In circumstances where the at-will employment has been unequivocally established, Plaintiff's reliance on merely his continued employment to alter his status must be rejected. In short, there is no evidence to establish that MHA offered and he accepted an employment contract.

Under Torosyan, as Plaintiff pointed out, "when an employer issues an employment manual that confers on an employee *greater rights* than he or she previously had, the employee's continued work for the employer thereafter ordinarily demonstrates that the employee has accepted that offer of new rights..." Torosyan, 234 Conn. at 18 (emphasis added). Here, the provisions relied upon by Plaintiff contained in Sections 7.7 through 7.9 of the 2001 Manual remained similar, if not substantively the same as those issued in 1999, a time when Plaintiff admitted he was an at-will employee. (Compare Exhibits 4 and 17, attached to Def's Memo). Thus, there was no offer of greater rights, which the Plaintiff could accept as an implied contract in the manner described in Torosyan. As Plaintiff has presented no evidence beyond merely remaining employed to show that a contract existed, the Fifth and Sixth Counts must be dismissed. See Torosyan, 234 Conn. at 14-15 (Plaintiff must produce evidence to show that "issuance of a handbook to the employee was an 'offer' [and further]... that the employee accepted.").

Notably, Plaintiff testified that he understood when he was hired that he could be let go for any reason. (Pl. Dep., pp. 23-24). He also testified that he felt he was entitled to "lifetime employment." (Pl. Dep., pp. 10-11). As a matter of law, offers of lifetime employment are indefinite and by definition such employment is at-will. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 212, fn. 1 (1987) ("As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will."). In light of these

admissions, this Court can only conclude that the arrangement between the parties herein was one of at-will employment. Summary judgment for the defendants on this Count is therefore warranted.

> DEFENDANTS,
> MILFORD HOUSING AUTHORITY, ANTHONY VASILIOU, RICHARD ANDERSEN, HILARY HOLOWINK, JOHN AMENTA, EDWARD CANELLI, JACK TUCCIARONE,
>
> By: _/s/ Anne Noble Walker_
> Richard F. Vitarelli (ct 15145)
> Anne Noble Walker (ct 11637)
> Michael G. Petrie (ct 22789)
> Robinson & Cole LLP
> 280 Trumbull Street
> Hartford, CT 06103-3597
> Tel. No.: (860) 275-8200
> Fax No.: (860) 275-8299

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, certified mail, return receipt requested, on this 15th day of September, 2004 to:

Lewis H. Chimes, Esq.
Garrison, Levin-Epstein, Chimes & Richardson, P.C.
405 Orange Street
New Haven, CT 06511

_/s/ Anne Noble Walker_
Anne Noble Walker